Robinson, J.,
dissenting.
We have repeatedly insisted that probation conditions give the probationer fair notice of what conduct is prohibited and what conduct is required. State v. Sanville, 2011 VT 34, ¶8, 189 Vt. 626, 22 A.3d 450 (mem.) (“To be charged with violating probation, a defendant must have notice before the initiation of a probation revocation proceeding of what circumstances will constitute a violation of probation.” (quotation omitted)). In Sanville we held that the prohibition of “threatening behavior” in a probation condition did not give the probationer sufficient notice that “mouthing off’ to his landlord would subject him to revocation. Id. ¶¶ 9-10; see also State v. Johnstone, 2013 VT 57, ¶¶ 16-17, 194 Vt. 230, 75 A.3d 642 (revisiting ambiguity of term “threatening behavior”). We have been so insistent on clear and unambiguous probation conditions that we have declined to interpret a badly worded condition to mean what the court probably intended to say if the condition as drafted did not clearly reflect that meaning. In State v. Galanes we considered whether the probationer’s spontaneous sexual encounter without prior approval of his probation officer ran afoul of the following condition: “You must inform your [probation officer] of the name and contact information of any person with whom you are planning to have a date or with whom you are planning to begin a dating, sexual or romantic relationship, prior to the date or beginning of the relationship.” 2015 VT 80, ¶2, 199 Vt. 456, 124 A.3d 800. We acknowledged the strength of the State’s argument that under the circumstances, the sentencing court must have intended a broad reading to include the spontaneous sexual encounter at issue, but concluded that we were “required ... to enforce a probation condition as it is written and not as we wish it had been written.” Id. ¶ 22.
¶ 19. Accordingly, we have declined to read unwritten terms into probation conditions, or to enforce a probation officer’s interpre *575 tation of a condition to impose requirements not expressly reflected in the language of the condition itself. See State v. Bostwick, 2014 VT 97, ¶¶ 12-24, 197 Vt. 345, 103 A.3d 476. In Bostwick we considered a condition that required the defendant to “reside where your [supervising [o]fficer directs.” Id. ¶ 16. The defendant secured housing approved by his probation officer for temporary purposes only. His probation officer instructed him to look for permanent housing daily, and gave him a specific deadline to show “a genuine housing search effort.” Id. ¶ 4. Dissatisfied with the rigor of defendant’s search, the defendant’s probation officer sought revocation of probation based on a violation of the condition requiring defendant to “reside where your [supervising [ojfficer directs.” We declined to interpret this condition to empower the supervising officer to require the defendant to meet specific housing-search requirements by a deadline established by the officer. Id. ¶ 12. We explained that “the probation officer crossed the line between condition interpretation and modification in imposing the new requirements regarding the rate of [housing-search] call frequency and the deadline by which defendant needed to find housing or be found in violation.” Id. (quotation omitted); see" also State v. Rivers, 2005 VT 65, ¶ 16, 178 Vt. 180, 878 A.2d 1070 (reversing probation revocation because probation officer’s application of the probation condition — that the defendant could not attend a fair unsupervised — was not “evident from [the] plain language” of the condition prohibiting contact with children). Against this backdrop, the majority has essentially construed the probation condition in question here as requiring that defendant enroll in the DV Solutions program within a reasonable time period to be determined by his probation officer. To determine whether this reading is supported by the probation condition itself, or whether, as in Bostwick, it adds additional requirements not reflected in the probation condition itself, I turn to the text of Condition 31. It reads as follows: “31. DV Solutions.” That’s it. That’s all it says. The entirety of the condition reflected in the certificate of probation is the name of a program for domestic-violence offenders.
¶20. Although the condition does not say, “Complete the DV Solutions program by the end of your term of probation,” I am willing to infer that identification of the program as a probation condition contemplates completion of the program within the term of probation. But the majority goes much further than this. The *576 condition decidedly does not say, “Complete the DV Solutions program within a reasonable time, as determined by your probation officer.” Nor does it say, “Begin the DV Solutions program within a reasonable time, as determined by your probation officer.” Yet the majority reads the condition as including both an implicit requirement that defendant begin the program in a specified timeframe and an implicit delegation of authority to the probation officer to determine that timeframe.
¶ 21. I cannot square this holding with our decisions in Bostwick and Galanes, nor with the line of cases addressing the clarity of probation conditions, noted above. If a condition requiring a defendant to contact his probation officer in advance if he is planning to have a sexual relationship cannot be stretched to reach a spontaneous sexual encounter, Galanes, 2015 VT 80, ¶¶ 20-22, and a condition requiring that a defendant live where his probation officer directs cannot be stretched to empower the probation officer to require the defendant to undertake a specified housing search by a date certain, Bostwick, 2014 VT 97, ¶ 12, then I do not see how a condition that says “DV Solutions” can be said to put this defendant on notice that failure to enroll in the program by a specified time determined by his probation officer will subject him to revocation of probation. This is especially true given the absence of any evidence that having failed to enroll by the date established by his probation officer, defendant could not possibly complete the program within the term of his probation.
¶22. I recognize that the standard for finding plain error is high, requiring “a showing that the error strikes at the heart of defendant’s constitutional rights or results in a miscarriage of justice.” State v. Reynolds, 2014 VT 16, ¶ 33, 196 Vt. 113, 95 A.3d 973 (quotation omitted). But where the revocation of defendant’s probation rests on an interpretation of the probation condition that is not supported by the text of the condition itself and that attributes to defendant’s probation officer the authority to add timing requirements not reflected or reasonably implicit in the condition, I believe that standard is satisfied. For these reasons, I respectfully dissent.